[Cite as *Columbus v. State*, 2023-Ohio-195.]

IN THE COURT OF APPEALS OF OHIO

TENET APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 22AP-676 (C.P.C. No. 19CV-2281) |
| State of Ohio, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 24, 2023

*Zack Klein*, City Attorney, *Richard N. Coglianese*, *Lara N. Baker-Morris*, and *Matthew D. Sturtz*, for appellee.

*Dave Yost*, Attorney General, *Heather L. Buchanan*, *Andrew D. McCartney*, and *Allison D. Daniel*, for appellant.

ON MOTION TO DISMISS

KLATT, J.

{¶ 1} The instant matter arose out of a complaint for declaratory and injunctive relief filed in the Franklin County Court of Common Pleas by plaintiff-appellee, City of Columbus (the "City"), against defendant-appellant, State of Ohio, on March 19, 2019. In the complaint, the City sought a declaration pursuant to R.C. Chapter 2721 that R.C. 9.68 and the provisions of Am.Sub.H.B. No. 228 ("HB 228") amending R.C. 9.68 violated the Ohio Constitution, including the home rule provisions in Article XVIII, Section 3. In addition to a declaration under R.C. Chapter 2721, the City also sought relief in the form of a preliminary and permanent injunction against both HB 228 and R.C. 9.68 "enjoining them and any predecessor version of R.C. 9.68." (Compl. at 12.) On November 2, 2022, the trial court filed a decision and entry granting a preliminary injunction "against R.C. 9.68

both in its original and amended forms and Am Sub. H.B. (sic)." (Nov. 2, 2022 Decision at 11.) The state timely appealed. The matter is now before us on two motions filed by the City: a December 8, 2022 motion to stay briefing and to dismiss the appeal, and a December 14, 2022 motion to expedite briefing on motion to dismiss. Before turning to the question of whether we are presented with a final appealable order, it is necessary to briefly review the constitutional provisions and legislative enactments at issue in this case.

## I. Home Rule and R.C. 9.68

{¶ 2}   Article XVIII, Section 3 of the Ohio Constitution, a portion of Ohio's Home Rule Amendment adopted following the Constitutional Convention of 1912, provides: "[M]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." *See generally Beachwood v. Bd. of Elections*, 167 Ohio St. 369, 371 (1958) ("The power of local self-government granted to municipalities by Article XVIII relates solely to the government and administration of the internal affairs of the municipality, and, in the absence of statute conferring a broader power, municipal legislation must be confined to that area."); *Maumee v. PUC*, 101 Ohio St.3d 54, 2004-Ohio-7, ¶ 8, fn. 3. "The Home Rule Amendment provides independent authority to Ohio's municipalities with regard to local police regulations." *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, ¶ 13, citing *W. Jefferson v. Robinson*, 1 Ohio St.2d 113, 115 (1965). However, a state statute takes precedence over a municipal ordinance where "(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, ¶ 17. *See Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, paragraph one of the syllabus (defining a general law for purposes of home rule analysis).

{¶ 3}   The General Assembly enacted R.C. 9.68 as part of Sub.H.B. No. 347 in 2006. R.C. 9.68, which became effective on March 14, 2007, recognized the "individual right to keep and bear arms" and found there was a "need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition." 2007 R.C. 9.68(A). However, the statute "did more than merely restate the need for

uniformity" of laws regulating ownership and possession of firearms throughout the state. *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, ¶ 20. R.C. 9.68 as enacted in 2006 also provided that "[e]xcept as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition." 2007 R.C. 9.68(A). The statute also allowed for the awarding of costs and reasonable attorney fees to "any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section." 2007 R.C. 9.68(B). Finally, the statute included exceptions for zoning ordinances as specified under the statute. 2007 R.C. 9.68(D).

{¶ 4} As noted by the Supreme Court of Ohio, "the General Assembly, by enacting R.C. 9.68(A), gave persons in Ohio the right to carry a handgun unless federal or state law prohibits them from doing so," and, by so doing, prevented municipal ordinances from "infring[ing] on that broad statutory right." *Ohioans for Concealed Carry* at ¶ 20. In 2010, the Supreme Court held that R.C. 9.68 as enacted in 2006 was "a general law that displaces municipal firearm ordinances and does not unconstitutionally infringe on municipal home rule authority." *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, ¶ 1.

{¶ 5} In 2018, the General Assembly passed HB 228, which in part amended R.C. 9.68. The amendments to R.C. 9.68, which became effective December 28, 2019, included new language expressing the need for uniform laws regulating, among the previously listed categories, the "manufacture, taxation, keeping, and reporting of loss or theft" of firearms, their components, and their ammunition. 2019 R.C. 9.68(A). Furthermore, R.C. 9.68 as amended by HB 228 provided:

> Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, *including by any ordinance, rule, regulation, resolution, practice, or other action or any threat of citation, prosecution, or other legal process,* may own, possess, purchase, *acquire, transport, store, carry,* sell, transfer, *manufacture,* or keep any firearm, part of a firearm, its components, and its ammunition. *Any such further license, permission, restriction, delay, or process interferes with the fundamental individual right described in this division and*

> *unduly inhibits law-abiding people from protecting themselves, their families, and others from intruders and attackers and from other legitimate uses of constitutionally protected firearms, including hunting and sporting activities, and the state by this section preempts, supersedes, and declares null and void any such further license, permission, restriction, delay, or process.*

(Emphasis added.) 2019 R.C. 9.68(A). Furthermore, the General Assembly specifically provided for a cause of action to enforce the rights acknowledged in the statute:

> A person, group, or entity adversely affected by any manner of ordinance, rule, regulation, resolution, practice, or other action enacted or enforced by a political subdivision in conflict with division (A) of this section may bring a civil action against the political subdivision seeking damages from the political subdivision, declaratory relief, injunctive relief, or a combination of those remedies. Any damages awarded shall be awarded against, and paid by, the political subdivision. In addition to any actual damages awarded against the political subdivision and other relief provided with respect to such an action, the court shall award reasonable expenses to any person, group, or entity that brings the action, to be paid by the political subdivision, if either of the following applies:
>
> (1) The person, group, or entity prevails in a challenge to the ordinance, rule, regulation, resolution, practice, or action as being in conflict with division (A) of this section.
>
> (2) The ordinance, rule, regulation, resolution, practice, or action or the manner of its enforcement is repealed or rescinded after the civil action was filed but prior to a final court determination of the action.

2019 R.C. 9.68(B).[1]

## II. Final Appealable Order

{¶ 6} Ohio courts of appeals possess jurisdiction to review only final appealable orders of lower courts within their districts. Article IV, Section 3(B)(2), Ohio Constitution. If an order is not a final, appealable order, a court of appeals lacks jurisdiction and must, therefore, dismiss the appeal. *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, ¶ 7. A trial court's designation of an order as final and appealable is not dispositive of the issue. *G. Scottco Invest. Co. v. Korleski*, 10th Dist. No. 10AP-582, 2011-Ohio-6656, ¶ 9. An order

---

[1] Effective September 13, 2022, R.C. 9.68 was amended by 2022 Am.Sub.S.B. No. 156 to include knives among the recognized protections.

is final and appealable only if it meets the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Recovery Funding, L.L.C. v. Beckman*, 10th Dist. No. 20AP-592, 2022-Ohio-1095, ¶ 25, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88 (1989).

{¶ 7} Civ.R. 54(B) provides:

> In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

If Civ.R. 54(B) language is required, the court must determine whether the order contains a certification that "there is no just reason for delay." *Kierland Crossing, LLC v. Ruth's Chris Steak House, Inc.*, 10th Dist. No. 11AP-627, 2011-Ohio-5626, ¶ 6. "Civ.R. 54(B), however, is merely a procedural device. It cannot affect the finality of an order." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21 (1989).

{¶ 8} The parties agree that the issue in the present matter is whether the trial court's order granting a preliminary injunction meets the requirements of R.C. 2505.02(B)(4). Under R.C. 2505.02(B)(4), an order is a final order if it:

> [G]rants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

Thus, in order for R.C. 2505.02(B)(4) to apply, a court must first find that the order in question grants or denies a provisional remedy, and then must determine whether the order meets the two-part test in R.C. 2505.02(B)(4)(a) and (b).

{¶ 9} A preliminary injunction is a provisional remedy. R.C. 2505.02(A)(3). *See State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 45, quoting *State v. Muncie*, 91 Ohio St.3d 440, 448 (2001) (describing list of ancillary proceedings in R.C. 2505.02(A)(3)

as "a nonexhaustive list of examples"); *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. No. 15AP-941, 2017-Ohio-555, ¶ 6 (stating that a "preliminary injunction is a provisional remedy, considered interlocutory, tentative, and impermanent in nature"); *Dimension Serv. Corp. v. First Colonial Ins. Co.*, 10th Dist. No. 14AP-368, 2014-Ohio-5108, ¶ 18 ("The purpose of a preliminary injunction is to preserve the status quo pending a resolution of the case on the merits."). Thus, the order in this case granting a preliminary injunction meets the threshold requirement of R.C. 2505.02(B)(4) as an order granting a provisional remedy. Importantly, the Supreme Court of Ohio has held that "an order granting or denying a provisional remedy is not subject to the requirements of Civ.R. 54(B)" because a "provisional remedy is a remedy other than a claim for relief." *State ex rel. Butler Cty. Children Servs. Bd. v. Sage*, 95 Ohio St.3d 23, 25 (2002), citing *Bob Krihwan Pontiac-GMC Truck, Inc. v. Gen. Motors Corp.*, 141 Ohio App. 3d 777, 781-82 (10th Dist.2001). *See State ex rel. DeWine v. Precourt Sports Ventures LLC*, 10th Dist. No. 18AP-342, 2018-Ohio-2414, ¶ 16; *Painter and Pollis*, Ohio Appellate Practice, Section 2:22 (2021) ("If an order is otherwise final under R.C. 2505.02(B)(4), the inclusion or omission of final-judgment language prescribed by Rule 54(B) is immaterial."). Though Civ.R. 54(B) is inapplicable, an order granting a preliminary injunction must still meet the two-part test set forth in R.C. 2505.02(B)(4)(a) and (b) to qualify as a final, appealable order.

{¶ 10} Appellees concede R.C. 2505.02(B)(4)(a) is met. Indeed, the trial court's order granting a preliminary injunction determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the state with respect to the provisional remedy.

{¶ 11} Next, in order to meet the requirement in R.C. 2505.02(B)(4)(b), this court must find that the state would not be afforded a meaningful or effective remedy absent an immediate appeal. The Supreme Court has stated that R.C. 2505.02(B)(4)(b) "recognizes that, in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment." *Muncie* at 451. Or, in other words, "[i]n some instances, 'the proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing

party." *Id.*, quoting *Gibson-Myers & Assocs. v. Pearce*, 9th Dist. No. 19358, 1999 Ohio App. LEXIS 5010 (Oct. 27, 1999).

{¶ 12} First, the state argues it would be denied meaningful relief absent an immediate appeal because the City moved only for a preliminary, but not a permanent injunction. Where the ultimate relief sought is a permanent injunction, courts have held that an appeal at the conclusion of the proceedings will ordinarily provide a meaningful and effective remedy. *See Taxiputinbay, LLC v. Put-In-Bay*, 6th Dist. No. OT-20-021, 2021-Ohio-191, ¶ 12 (stating that "[i]t is well established that the granting of a temporary or preliminary injunction, in a suit in which the ultimate relief sought is a permanent injunction, is generally not a final appealable order") (internal citations and quotations omitted); *Preterm-Cleveland v. Yost*, 1st Dist. No. C-220504, 2022-Ohio-4540, ¶ 18; *Clean Energy Future, LLC v. Clean Energy Future-Lordstown, LLC*, 11th Dist. No. 2017-T-0110, 2017-Ohio-9350, ¶ 7; *Jacob v. Youngstown Ohio Hosp. Co.*, 7th Dist. No. 11 MA 193, 2012-Ohio-1302, ¶ 24; *Obringer v. Wheeling & Lake Erie Ry.*, 3d Dist. No. 3-09-08, 2010-Ohio-601, ¶ 18. Although the City did not move for both a preliminary and permanent injunction at the same time, it did specify in its complaint that it was seeking both preliminary and permanent injunctive relief in addition to a declaration that the challenged provisions were unconstitutional. Because the provisional remedy at issue in this matter is a preliminary injunction and the City ultimately seeks a permanent injunction, there is some support for finding that the second prong of R.C. 2505.02(B)(4) is not met in this case. *See Preterm-Cleveland* at ¶ 20.

{¶ 13} Next, the parties disagree as to whether the preliminary injunction in this case preserves or alters the status quo. Courts have generally held that an order granting a preliminary injunction is generally not a final appealable order where the preliminary injunction acts to maintain the status quo pending a final determination on the merits. *See E. Cleveland Firefighters, IAFF Local 500 v. E. Cleveland*, 8th Dist. No. 88273, 2007-Ohio-1447, ¶ 5; *Aquasea Group, LLC v. Singletary*, 11th Dist. No. 2013-T-0120, 2014-Ohio-1780, ¶ 10, citing *Hootman v. Zock*, 11th Dist. No. 2007-A-0063, 2007-Ohio-5619, ¶ 16. Ohio courts have defined "status quo" in the context of a preliminary injunction as " 'the last, actual, peaceable, uncontested status which preceded the pending controversy.' "

*Obringer* at ¶ 19, quoting *Postma v. Jack Brown Buick, Inc.*, 157 Ill.2d 391 (1993). *See Taxiputinbay* at ¶ 17; *Clean Energy Future* at ¶ 5.

{¶ 14} The trial court found that the City had demonstrated a likelihood of success on the merits that "R.C. 9.68 as amended violates the home rule provisions of the Ohio Constitution." (Nov. 2, 2022 Decision at 9.) The trial court granted a preliminary injunction enjoining "R.C. 9.68 both in its original and amended forms and Am Sub. H.B. (sic)." (Nov. 2, 2022 Decision at 11.) The City argues that the preliminary injunction preserves the status quo because the City's lawsuit was filed before the amendments in HB 228 took effect. The City also argues that the preliminary injunction's enjoining of the prior version of R.C. 9.68 preserves the status quo "that has existed since 1912 when the Home Rule amendments were added to the Ohio Constitution giving municipalities the constitutional authority to regulate public safety issues." (City's Mot. to Dismiss at 14-15.) The state responds that the preliminary injunction alters the status quo that existed between the parties prior to the litigation because R.C. 9.68 was in effect prior to the filing of the City's complaint.

{¶ 15} As previously discussed, R.C. 9.68 was first enacted in 2006 and became effective March 14, 2007. The City filed its complaint in the present matter on March 19, 2019, several months before the amendments to R.C. 9.68 wrought by HB 228 became effective on December 28, 2019. However, R.C. 9.68 as originally enacted in 2006 had already been in effect for over twelve years and had been held to not violate the home rule provisions of the Ohio Constitution for over eight years before the City filed its complaint. By enjoining not only the portions of HB 228 amending R.C. 9.68, but the entire statute, the trial court's preliminary injunction undoubtedly altered the status quo.

{¶ 16} While analysis of the status quo can provide a meaningful guidepost in understanding whether a provisional remedy meets the requirement of R.C. 2505.02(B)(4)(b), the ultimate question remains whether the appealing party would be afforded a meaningful or effective remedy by an appeal following final judgment. *See Aquasea Group, LLC*, 11th Dist. No. 2013-T-0120, 2014-Ohio-1780, at ¶ 11-12. Cases in which the court has found the appealing party would not be afforded such a remedy absent an immediate appeal are instructive. *See LCP Holding Co. v. Taylor*, 158 Ohio App.3d 546, 2004-Ohio-5324, ¶ 28 (11th Dist.) (finding R.C. 2505.02(B)(4)(b) met where

trade secrets may be disclosed); *Premier Health Care Servs. v. Schneiderman*, 2d Dist. No. 18795, 2001 Ohio App. LEXIS 5170 (Aug. 21, 2001) (finding R.C. 2505.02(B)(4)(b) met where party claims loss of market share or disclosure of trade secrets); *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. No. 22387, 2005-Ohio-5103, ¶ 29 (finding R.C. 2505.02(B)(4)(b) met where order required production of potentially confidential information); *Schottenstein, Zox & Dunn v. McKibben*, 10th Dist. No. 01AP-1384, 2002-Ohio-5075, ¶ 19 (finding R.C. 2505.02(B)(4)(b) met where order compelled discovery of potentially privileged information because "[o]nce the client file is revealed, the bell will have rung, and, if in fact the file contains sensitive material, [the appealing party] would have no adequate remedy on [a subsequent] appeal"); *Amer Cunningham Co., L.P.A. v. Cardiothoracic & Vascular Surgery of Akron*, 9th Dist. No. 20899, 2002-Ohio-3986, ¶ 11 (finding R.C. 2505.02(B)(4)(b) met where order compelled party to testify concerning privileged conversations and information); *Muncie*, 91 Ohio St. at 451 (finding R.C. 2505.02(B)(4)(b) met where order compelled administration of psychotropic medication); *Lykins Oil Co. v. Corbin*, 12th Dist. No. CA2020-07-036, 2021-Ohio-1126, ¶ 15 (finding R.C. 2505.02(B)(4)(b) met where preliminary injunction impacted continuing ability to work and solicit clients during term of noncompete agreement); *State ex rel. Bowling v. DeWine*, 10th Dist. No. 21AP-380, 2021-Ohio-2902 (finding R.C. 2505.02(B)(4)(b) met where harm from denial of preliminary injunction could not be rectified by monetary damages at a later date and funding source at issue would expire); *AIDS Taskforce of Greater Cleveland v. Ohio Dept. of Health*, 8th Dist. No. 105971, 2018-Ohio-2727, ¶ 18; *Bob Krihwan*, 141 Ohio App.3d at 781 (stating that R.C. 2505.02(B)(4)(b) does not "require the absence of every theoretical remedy in order to find that appellant would be denied a 'meaningful' or 'effective' remedy following final judgment. This is particularly so when, in a situation such as this, the court will be unable to fashion a remedy which would replace a potential loss of business goodwill, or repair business relationships with third parties such as creditors and suppliers").

{¶ 17} Here, in addition to its findings regarding the amendments to R.C. 9.68 enacted under HB 228, the trial court also enjoined R.C. 9.68 as originally adopted, finding the City demonstrated a likelihood of success on the merits that the statute violated the home rule provisions of the Ohio Constitution. As previously noted, the Supreme Court of

Ohio has held that R.C. 9.68 as originally enacted does not violate municipal home rule authority. *Cleveland*, 128 Ohio St.3d 135, 2010-Ohio-6318, at ¶ 1. Following the trial court's order granting preliminary injunctive relief, the Columbus City Council passed Ordinance 3176-2022,[2] which in part enacted Columbus City Code ("C.C.C.") 2323.32 and 2323.321, two provisions which purport to regulate firearm magazine capacity. Both C.C.C. 2323.32 and 2323.321 criminalize conduct that is arguably encompassed by R.C. 9.68.[3]

{¶ 18} Although the state can claim some harm whenever a trial court enjoins a statute, this case presents a different and unique set of circumstances. The trial court's order does not merely disrupt the status quo in an abstract sense, but it displaces a longstanding statute, which had the stated purpose of promoting clarity and uniformity of regulation of firearms throughout the state, and replaces it with uncertainty and a patchwork of laws. *See Ohioans for Concealed Carry*, 120 Ohio St.3d 96, 2008-Ohio-4605, at ¶ 20. Thus, there is an immediate impact and harm, both to the state's interest and also to individuals in jeopardy of criminal prosecution under the newly enacted city code provisions. The state is further harmed by the enjoining of the original version of R.C. 9.68 on grounds rejected by the Supreme Court over a decade ago. Delaying the resolution of this issue until the conclusion of the proceedings denies the state a meaningful or effective remedy because it removes the protections of stare decisis inherent in our legal system, thereby inviting repetitive challenges to laws deemed constitutional and forcing the state to expend resources in their defense. *Compare Preterm-Cleveland*, 1st Dist. No. C-220504, 2022-Ohio-4540, at ¶ 26 (finding state was not deprived of meaningful or effective remedy in part because statute had already been enjoined for nearly three years by federal court

---

[2] Pursuant to Evid.R. 201, a court, including an appellate court, may take judicial notice of a fact not subject to reasonable dispute that is " 'either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' " *See State ex rel. Brime v. McIntosh*, 10th Dist. No. 19AP-70, 2019-Ohio-4019, ¶ 28, quoting Evid.R. 201(B); *State v. Murphy*, 10th Dist. No. 12AP-952, 2013-Ohio-5599, ¶ 23; *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, ¶ 20, quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992), quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991) (quoting *Liberty Mut. Ins. Co.* for the proposition that a " 'court may take judicial notice of a document filed in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" ' "). We take judicial notice of Columbus Ordinance 3176-2022 and the code provisions enacted thereby.

[3] The City appears to have recognized this through its enactment of C.C.C. 2323.321, which purports to be effective "if Ohio Revised Code Section 9.68 is reinstated." Ordinance 3176-2022.

before it went into effect). Under the facts and circumstances of this case, considering (1) the trial court's order enjoined the originally adopted version of R.C. 9.68 on the same grounds that the Supreme Court previously found did not violate municipal home rule authority, and (2) the creation of uncertainty regarding the applicability of state and local law resulting from the order's disruption of the status quo, we find the state would be denied a meaningful or effective remedy absent an immediate appeal.

{¶ 19} Because both prongs of R.C. 2505.02(B)(4) are met in this case and Civ.R. 54(B) does not apply, we find the trial court's November 2, 2022 decision and entry is a final appealable order and, accordingly, deny the City's motion to dismiss. The City's December 14, 2022 motion to expedite briefing on the motion to dismiss is rendered moot.

*Motion to dismiss denied.*

BEATTY BLUNT, P.J., and DORRIAN, J., concur.

————————